UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORIAN TREVOR SYKES,
     Plaintiff,

v.

COUNTY OF GENESEE,
CORIZON HEALTH
CORPORATION, and TAQUANA
SCALES,
     Defendants.

_____/

Case No.: 20-13361

Shalina D. Kumar
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY
JUDGMENT (ECF Nos. 242, 243, 246)**

## I.     BACKGROUND

A.     Procedural History

Plaintiff Dorian Trevor Sykes filed this prisoner civil rights suit on

December 1, 2020, without the assistance of counsel.  (ECF No. 1).  This matter

was referred to the undersigned for all pretrial proceedings.  (ECF No. 28).  All

three parties moved for summary judgment.  (ECF Nos. 242, 243, 246).  The

motions are fully briefed and ready for report and recommendation.

For the reasons explained below, the undersigned recommends that

defendant Corizon Health Corporation ("Corizon") and defendant Genesee

County's motions for summary judgment be **GRANTED**, and Plaintiff's motion for partial summary judgment be **DENIED**.

### B.   Factual Background

The central issue in Plaintiff's case is his alleged sexual assault by a LPN, former defendant Scales.  Plaintiff sues Genesee County and Corizon for their alleged policies and customs that made it possible for Scales to sexually assault him repeatedly between June and August 2020.  At the time of the alleged assault, Plaintiff was a federal pretrial detainee at the Genesee County Jail beginning June 8, 2020.  He was transferred to the jail to receive mental health treatment.  (ECF No. 35, PageID.183, Second Amended Complaint).

#### 1.   The Alleged Assault

Plaintiff testified that the first instance of sexual assault occurred on June 18, 2020.  (ECF No. 242, PageID.2314).  He said he was assaulted again two to four days later, (ECF No. 242-4, PageID.2465, at p. 21), and through August 2020.  Corizon does not dispute that Plaintiff was sexually assaulted.  (ECF No. 242, PageID.2314).  Genesee County does.

Plaintiff alleges that Scales would fabricate a reason to have him removed from his cell and brought to the medical exam room where Scales would perform sexual acts on Plaintiff.  (ECF No. 35, PageID.183).  To accomplish this, he

alleges that Scales would add his name to a handwritten list of inmates who needed to be seen by medical personnel.  (ECF No. 35, PageID.183, 210).

In response to Plaintiff's motion for summary judgment, Genesee County provided an affidavit from Scales in which she denies having had sexual contact with Plaintiff.  She stated that she recalled only two times when she was alone with Plaintiff in the exam room; at all other times a deputy was present.  During those two occasions, she stated she performed legitimate physical examinations and that she never touched him sexually or inappropriately.  (ECF No. 257-1, PageID.2751).  She furthered that Plaintiff had a cellular telephone in the jail that he used to call her and send flirtatious texts while she was not at work, including naked pictures of himself.  (*Id.* at PageID.2752).

Plaintiff insists the assaults occurred and that Scales already admitted to it during an investigation into contraband at the jail.  Plaintiff does not dispute that there was an investigation into the presence of contraband cellular telephones in the jail and that he participated in the illegal activity.  On October 22, 2020, Plaintiff spoke to jail Lieutenant Todd Lanning asking for help to prevent a transfer out of the Genesee County Jail.  To obtain Lanning's help, Plaintiff offered him information that there were five cellular devices in a particular area of the jail.  Plaintiff told Lanning to check the commissary, or store, in the jail.  He also asked Lanning to throw away of the items he had bought from the commissary before he

was transferred to another facility.  Lanning reviewed video of the commissary and saw a breach of protocol with an inmate.  He searched that inmate's cell and found a cellular device, batteries, and cellular telephone charger.

Lanning later drove to the Saginaw County Jail, where Plaintiff had been transferred, to get more information from Plaintiff.  Plaintiff gave Lanning a telephone number of a person he claimed was bringing the telephones to the jail—Tracy Frazier.  Frazier was employed by Aramark, the company that operated the commissary.  Frazier admitted to bringing two cellular telephones into the jail and giving them to the prisoner who was caught with the telephone.  She said she got the telephones from Scales.  She also said Scales and Plaintiff were involved in a sexual relationship.  (ECF No. 165-3, PageID.1455-57, Lanning Affidavit).

Scales was interviewed by Genesee County Sheriff's Lieutenant Kennamer.  During that interview, Scales admitted to bringing contraband into the jail and to one instance of sexual contact with Plaintiff.  Plaintiff's cell at Saginaw County Jail was searched; a cellular device was found in a jar of peanut butter he bought at the Genesee County Jail commissary.  Scales and Plaintiff were charged with smuggling contraband into the jail.  (ECF No. 165-3, PageID.1457).  Scales was also charged with criminal sexual conduct.  The County says that charge was

dropped when she pleaded guilty to the smuggling charge.[1]  (ECF No. 257, PageID.2741).

2.      Reporting the Assaults

Plaintiff stated under penalty of perjury that he reported the assaults to Genesee County Jail mental health counselor Julie Rexroth and Dr. McCarthy, both Corizon employees during July 2020, but neither further reported the assaults to appropriate authorities.  (ECF No. 35, PageID.211).  During July 2020, Plaintiff alleges he sent a letter to Corizon Health Corp., Corporate Headquarters, detailing the sexual assaults, but he did not receive a response.  (ECF No. 35, PageID.184). He also asserts that he wrote a letter addressed to the Genesee County "Chief Executive Officer" detailing the sexual assault and placed it in the outgoing mail at the jail on July 7, 2020.  (ECF No. 35, PageID.208).  He did not receive a response.

Both Rexroth and Dr. McCarthy deny that Plaintiff told them about the assaults.  (ECF No. 242-9, PageID.2525, Rexroth Affidavit; ECF No. 242-8, PageID.2521, McCarthy Affidavit).[2]  Corizon provided health care records

_____

[1] Plaintiff moved for Rule 11 sanctions against the County's counsel for submitting Scales' affidavit.  He argues that the affidavit was submitted in bad faith because counsel knew the claims in the affidavit are false since Scales admitted before to the assault to Detective Kennamer.  (ECF No. 266, PageID.2831).  He asserts the criminal sexual conduct charge against Scales was dropped in exchange for her affidavit submitted here. (*Id.* at PageID.2832).  Plaintiff did not provide admissible evidence in support of his assertions.

[2] In response to Corizon's motion for summary judgment, Plaintiff asserts Rexroth's and McCarthy's affidavit cannot be accepted because they did not sign the affidavit under penalty of

reflecting treatment or encounters with Rexroth and Dr. McCarthy.  (ECF No. 242-1).  Neither provider made a note about a report of sexual assault, nor is there any such notation from another provider.

Both defendants deny that they ever received a letter from Plaintiff.  (ECF No. 242-7, PageID.2505, Requests to Produce to Corizon).  Genesee County says that mail addressed to the "CEO," a position that does not exist, would be forwarded to the County Corporate Counsel, Brian MacMillan.  (ECF No. 243, PageID.2538).  In an affidavit, Mr. MacMillan stated he never received a letter from Plaintiff about being sexually assaulted.  (ECF No. 165-4, PageID.1461).

Corizon asserts that, rather than report the sexual assaults, Plaintiff did not want the assaults uncovered.  It points to text messages between Plaintiff and Scales after he was transferred from the Genesee County Jail.  He said things such as encouraging Scales to follow his lead so they could pull through together and to not be fearful, that when it is over with (presumably the criminal charges against Scales), they would be together.  (ECF No. 242-3, PageID.2449-50).  When asked at his deposition whether he recalled telling Scales not to say anything about a sexual relationship, Plaintiff refused to answer and pleaded the Fifth Amendment.  (ECF No. 242-4, PageID.2488-89).  In his response to the motion for summary

---

perjury.  (ECF No. 248, PageID.2662).  Plaintiff is incorrect.  An affidavit sworn and notarized by a notary public has the same effect a declaration under 28 U.S.C. § 1746.

judgment in which these messages were discussed, Plaintiff did not dispute that the messages were between himself and Scales.  (*See* ECF No. 248).

### 3.    PREA Education and Training

Among the claims against Corizon and the County are that Plaintiff was not given information about the Prison Rape Elimination Act ("PREA") when he arrived at the jail (specifically, his right to be free from sexual abuse by jail staff and to report abuse) and that Corizon and jail employees were not adequately trained on PREA (specifically, to not sexually assault inmates or to report sexual assault to the appropriate authorities).

He says that when he arrived at the jail, he was not shown a PREA video or given documents educating him about PREA similar to other jails in which he was previously incarcerated.  (ECF No. 35, PageID.187).  Corizon attached a PREA inmate acknowledgment form purportedly signed by Plaintiff.  (ECF No. 242-1, PageID.2346).  Plaintiff asserted in his response briefs that his signature was forged, that he never signed such a document.[3]  (ECF No. 248, PageID.2662; ECF No. 249, PageID.2670).  His assertion is not supported by an affidavit, deposition testimony, or other admissible evidence.  Genesee County responded to discovery stating that Plaintiff was given a pamphlet regarding PREA, and that inmates were

---

[3] Genesee County was not in possession of the form.  (*See* ECF No. 243, PageID.2544, where the County states that it became aware Plaintiff signed the form when Corizon produced it).  Corizon had the form and attached it to its motion.

not required to sign for the pamphlet or to otherwise indicate receipt of it. Plaintiff says he did not receive a pamphlet. (ECF No. 246, PageID.2265-66, 2630).

Plaintiff alleged that the defendants did not train their employees on PREA.

Corizon provided a document listing the training Scales enrolled in and completed during March 2020. Among these trainings is "Corrections Environment." (ECF No. 234-2, PageID.2227). This training listed behaviors that are prohibited for medical staff, including "[h]aving a personal or intimate relationship with an inmate patient." (ECF No. 234-1, PageID.2211). The training elaborated that the employee may not engage in any sexual behavior with a patient. (*Id.* at PageID.2212). The training also explained that employees are "required to report any staff misconduct towards offenders," and that failure to report misconduct would result in corrective action, potentially including termination. (*Id.* at PageID.2213).

During discovery, Plaintiff sought any documents signed by Rexroth or McCarthy indicating they had received PREA training. Corizon did not have such documents to produce, but did provide a Clinical Objectives Checklist related to PREA. The checklist was signed by a non-party as an example checklist provided in response to a request for the signed checklist for employees including Scales and Rexroth. Corizon did not have checklists signed by Rexroth or McCarthy, nor additional responsive documents. (ECF No. 246, PageID.2561, 2614, 2618).

8

In their affidavits, Rexroth and Dr. McCarthy stated that they received training on PREA, and that their licenses required them to assist patients who report sexual abuse separate and apart from obligations under PREA.  (ECF No. 242-9, PageID.2526; ECF No. 242-8, PageID.2522).

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)).  In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under § 1983.  436 U.S. at 700-01.  However, such a claim may be brought only when "execution of a government's policy or custom, whether made

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted).  For these reasons, to succeed on a *Monell* claim, a plaintiff must first allege that the municipality itself caused a constitutional tort.  *Monell*, 436 U.S. 658 at 691.  "A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*.  Second, a plaintiff must show that the alleged conduct qualifies as a policy.  *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690.  *Monell* liability may also attach when a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91.  A plaintiff must claim that "a deliberate choice to follow a course of action is made

from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Third, a plaintiff must show causation. In other words, a plaintiff must connect the policy to the particular injury alleged. "At bottom, this is a causation inquiry, requiring the plaintiff to show that it was the defendant's custom or policy that led to the complained of injury." *Powers v. Hamilton Cnty. Pub. Def. Com'n*, 501 F.3d 592, 608 (6th Cir. 2007) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993)).

A.    Corizon's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment Against Corizon

As an initial matter, Plaintiff asks the Court to liberally construe his motion for summary judgment. "[L]iberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates*, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in

unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc*., 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### 1.  Handwritten lists

Plaintiff alleges that Corizon is liable to him for their practice of using handwritten lists to call inmates to the exam room.  (ECF No. 35, PageID.185). When Scales started her evening shift, she would be given a handwritten list from day-shift supervisors of inmates to be seen during her shift.  Scales could add names to the list simply by writing in the name of a prisoner.  Plaintiff insists the list should have been typed and signed by the day-shift supervisor and later personnel prevented from adding inmates to the list.  He suggests that he was assaulted because Scales could add his name to the list to see him without a supervisor's approval.  (ECF No. 35, PageID.185).

Corizon argues that this claim fails for lack of causation.  It does not dispute the use of handwritten lists to call inmates to the medical examination room.  That said, it asserts the practice of using handwritten lists to identify inmates that needed to be brought to the exam room was not the "but for" or proximate cause of

the assaults, that Scales' intervening criminal conduct was the cause.  (ECF No. 242, PageID.2325-26).  Plaintiff did not address this argument in his response brief.  (ECF No. 248).

In addressing causation for purposes of a *Monell* claim, the Court considers whether the Defendants' actions were "both the cause  in fact and the proximate cause" of the alleged deprivations of Plaintiff's constitutional rights.  *Powers*, 501 F.3d at 608.  "Conduct is the cause in fact of a particular result if the result would not have occurred but for the conduct.  Similarly, if the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result."  *Id.* (citation omitted).  Proximate cause is "about the appropriate scope of responsibility."  *Id.* at 609 (citation omitted).  The Court asks "whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct."  *Id.* (citation omitted).

The undersigned agrees that this claim fails for lack of causation.  To establish but-for causation, Plaintiff must present evidence that the assault would not have occurred but for the complained of conduct—the handwritten lists.  The evidence does not establish this.  Plaintiff presented no evidence even suggesting that Scales would not or could not have assaulted Plaintiff if not for use of handwritten lists to call inmates.

But even if a reasonable jury could conclude that the assault would not have happened but for the handwritten lists, the claim fails on proximate cause.  No evidence shows that it was reasonably foreseeable that Scales would assault Plaintiff as a result of using the handwritten list to call him to the medical examination room.  On this point, Corizon presented evidence that Scales participated in training that explained the prohibition on employees becoming romantically or sexually involved with an inmate or to sexually abuse inmates.  No evidence establishes that it was reasonably foreseeable that she would assault an inmate because she had access to and could alter the handwritten list.

### 2.    Plaintiff's "Inaction Theory"

Another of Plaintiff's claims against Corizon is for the failure to act after being informed of the sexual assault.  In an affidavit, Plaintiff stated that he wrote a letter to Corizon headquarters about the assaults and told Rexroth and Dr. McCarthy about the assaults, but no action was taken to stop the conduct.  (ECF No. 35, PageID.210-11).

Plaintiff's "inaction theory" requires evidence that establishes:

> (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citation omitted).  A plaintiff "must show prior instances of unconstitutional conduct demonstrating" that the municipality has "ignored a history of abuse" and was "clearly on notice" that its procedures in a particular area were deficient and that such deficiencies could likely lead to harm.  *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir.2005).  "Deliberate indifference is a stringent standard of fault."  *Id.* (citation omitted).  Failure to prove one of those elements causes the claim to fail. *Id.*

Corizon first argues that no evidence supports that it has a clear and persistent pattern of illegal activity.  Plaintiff did not address this argument. Corizon is right.  Two Genesee County Jail officials were questioned about whether there had been any reports of inappropriate staff/inmate relationships at the jail for the past ten years.  They recalled only one instance other than Plaintiff's, but that involved a jail employee, not a Corizon employee.  (ECF No. 242-6, PageID.2497).  The Genesee County Jail Administrator, Jason Gould, stated in an affidavit that that incident was investigated and the deputy was terminated. (ECF No. 165-2, PageID.1449).  Since this incident did not involve a Corizon employee, it cannot be used to support a clear and persistent patter of illegal activity involving Corizon.

The record also contains a June 22, 2020, complaint by Plaintiff against a male corrections officer for making sexual advances towards him in the medical unit.  Plaintiff stated that the deputy should not work near him.  (ECF No. 165-6, PageID.1469, 1470).  On June 24, 2020, in response to the allegation, a Corizon medical employee noted that the matter was addressed.  (*Id.* at PageID.1470).  How it was addressed is unclear.  Even so, a reasonable jury could not conclude that the instance of sexual harassment against Plaintiff that was addressed and alleged sexual assaults constitute a clear and persistent patter of Corizon employees failing to report sexual abuse.  Corizon medical staff likely treat hundreds of inmates every month.  The two circumstances involving Plaintiff show, at best, that two employees failed to follow proper procedures. *See Stewart v. City of Memphis, Tenn.*, 788 F. App'x 341, 347 (6th Cir. 2019)

The failure to meet the first element dooms the claim.  Even so, the undersigned will analyze the other elements.

Next, Corizon argues it did not have notice of the claim and that Plaintiff cannot show it tacitly approved the unconstitutional conduct.  It insists it did not get a letter from Plaintiff about the abuse and Rexroth and Dr. McCarthy provided affidavits attesting that Plaintiff did not report the sexual abuse to them.  (ECF No. 242, PageID.2328-30).  In his affidavit, Plaintiff swears he sent the letter and that he told Rexroth and Dr. McCarthy.  Corizon did not address Plaintiff's affidavits.

Corizon points to the text messages between Plaintiff and Scales after he was transferred out of the Genesee County Jail in September 2020, in which he suggests that the sexual contact between the two should be kept quiet. Plaintiff did not challenge the authenticity of these text messages.

The parties point to a narrow subset of evidence—whether Corizon had notice of Scales' sexual assaults. The question is broader here—did Corizon have notice of a clear and persistent pattern of unconstitutional conduct by Corizon employees. This showing is required because "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick v. Thompson,* 563 U.S. 51, 62-63 (2011). In *Connick*, the Court ruled that four *Brady* violations in a decade were not enough to put a prosecutor's office on notice that action was necessary in order to prevent the *Brady* violations at issue. *Id.* Similarly, here, the sexual harassment against Plaintiff and the sexual assaults by Scales that occurred over two months in 2020 are not a pattern of unconstitutional conduct that put Corizon on notice that some change was necessary to prevent further or future harassment or assaults.

Finally, Plaintiff failed to show how Corizon's "custom" was the moving force or direct causal link of his injury. *See Garner v. Memphis Police Dep't*, 8

F.3d 358, 364–65 (6th Cir. 1993) (a plaintiff must show "that the particular injury was incurred because of the execution of that policy.").

In short, Plaintiff failed to marshal evidence in support of his inaction theory of municipal liability against Corizon.

### 3.    Failure to Train

Plaintiff alleges that Corizon is liable for failing to adequately train its staff. He asserts there was a high turnover of nursing staff which resulted in new hires not being properly trained.  Because of this, Scales was allegedly not adequately trained or supervised regarding PREA.  (ECF No. 35, PageID.190-91).  He also alleges that Corizon is liable for failing to train its staff to report sexual abuse complaints made my inmates.  (*Id.* at PageID.191-92).

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ouza v. City of Dearborn Heights, Mich*., 969 F.3d 265, 286-287 (6th Cir. 2020) (quoting *Ellis v. Cleveland Mun. Sch. Dist*., 455 F.3d 690, 700 (6th Cir. 2006)).  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v.*

*Harris,* 489 U.S. 378, 390-91 (1989).  It is also not enough for a plaintiff "to show that his injury could have been avoided if the officer had had more or better training."  *Mayo v. Macomb Cnty.*, 183 F.3d 554, 558 (6th Cir. 1999).

Corizon presented evidence that Scales participated in training on prohibiting employee/inmate sexual relationships or sexual abuse.  This training listed behaviors that are prohibited for medical staff, including "[h]aving a personal or intimate relationship with an inmate patient."  (ECF No. 234-1, PageID.2211).  Scales was trained that she may not engage in any sexual behavior with a patient.  (*Id.* at PageID.2212).  The training also explained that employees are "required to report any staff misconduct towards offenders," and that failure to report misconduct would result in corrective action, potentially including termination.  (*Id.* at PageID.2213).

Corizon also produced evidence showing that Rexroth and Dr. McCarthy received training on reporting sexual abuse or otherwise assisting patients who had experienced sexual abuse.  In their affidavits, Rexroth and Dr. McCarthy stated that they received training on PREA, and that their licenses separately required them to assist patients who report sexual abuse.  (ECF No. 242-9, PageID.2526; ECF No. 242-8, PageID.2522).  During discovery, Plaintiff sought any documents signed by Rexroth or McCarthy indicating they had received PREA training.

Corizon did not have such documents to produce.  (ECF No. 246, PageID.2561, 2614, 2618).

Plaintiff speculates that, since Corizon could not produce training documents signed by Rexroth and McCarthy, neither were trained on the subject and as such they were not truthful in their affidavits.  (ECF No. 246, PageID.2559).  His speculation is unsupported by any admissible evidence.[4]  Mere speculations cannot defeat summary judgment.  *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) ("To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions.").  The undersigned must accept Corizon's evidence and concludes that Scales was trained to avoid sexual contact with inmates, and Rexroth and McCarthy were trained and had professional obligations to report sexual abuse on inmates, even though the details of the training given to Rexroth and McCarthy are not in the record.  And, in any event, even if a particular employee were not satisfactorily trained, that alone is not enough to conclude that the municipality was deliberately indifferent to constitutional rights in its training program.  *City of Canton,* 489 U.S. at 390-91.

On the evidence presented, a reasonable jury could not conclude that the training was inadequate.  This claim fails.

---

[4] And while the Court draws reasonable inferences in Plaintiff's favor as the nonmovant, it is not reasonable to infer that these individuals were not trained because there are no training documents signed by them.

Plaintiff failed to create a genuine issue of material fact on his theories of liability against Corizon and failed to support his motion for summary judgment against Corizon.  Corizon's motion for summary judgment should be granted and it should be dismissed; Plaintiff's motion for summary judgment against Corizon should be denied.

B.  Genesee County's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment Against the County[5]

Plaintiff has three theories of liability against Genesee County—failure to train or supervise employees to in turn supervise inmates during a medical examination, failure to train employees to educate inmates on PREA rights, and for having a pattern of tolerating sexual assaults by staff on inmates.

Under *Monell* and cases applying it, there are four ways a plaintiff can demonstrate a policy, practice, or custom that could allow for municipal liability:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).  The first two are based on the illegality of the

---

[5] The undersigned previously address Genesee County's argument that any claim Plaintiff raised under PREA should be dismissed.  The Court adopted the report and recommendation to dismiss any such claim, if it existed.  (ECF Nos. 252, 271).

municipal law, policy, or practice at issue—whether ordinances, other official

enactments, or the appropriate official's ratification. *Pembaur v. City of

Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Feliciano*,

988 F.2d at 655. The latter involve deliberate indifference to the rights of those

with whom municipal officials deal. *City of Canton, Ohio v. Harris*, 489 U.S. 378,

388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *North v. Cuyahoga Cnty.*, 754 F.

App'x 380, 384 n.2 (6th Cir. 2018) (citation omitted). Plaintiff alleges a failure to

train or supervise claim against the County.

### 1. Supervising Inmates During Medical Exams

Plaintiff alleges Genesee County is liable for Scales' assaults because of its

practice of not supervising inmates while they're being examined by medical staff.

(ECF No. 35, PageID.185). He says the County is liable for inadequate

supervision of the deputy who retrieved Plaintiff from his cell and took him to the

medical exam room and left him unsupervised with Scales. (ECF No. 35,

PageID.189-90).

Genesee County argues that it was not deliberately indifferent to a risk of

harm to Plaintiff because it was unaware there was a risk. It contends that the

deputy did not know about the assaults because Plaintiff did not tell him. (ECF

No. 243, PageID.2545). Plaintiff does not dispute that fact. It also contends it was

unaware of the assaults because Plaintiff told no one at the County, that Plaintiff

alleges he told Corizon employees but no County deputies.  (*Id.* at PageID.2546).

The County relied on Eighth Amendment deliberate indifference cases in its

analysis, but that reliance is misplaced because *Monell* governs the analysis here.

Plaintiff did not address these arguments in his response brief.  (ECF No.

249).  That said, Plaintiff elsewhere insists that he wrote a letter to the "CEO" of

the jail complaining about the assaults.  Legal counsel for the jail denies receiving

any such letter from Plaintiff.  (ECF No. 165-4, PageID.1461).

To repeat, "[t]o succeed on a failure to train or supervise claim, the plaintiff

must prove the following: (1) the training or supervision was inadequate for the

tasks performed; (2) the inadequacy was the result of the municipality's deliberate

indifference; and (3) the inadequacy was closely related to or actually caused the

injury."  *Ouza*, 969 F.3d at 286-287 (quotation omitted).  "That a particular officer

may be unsatisfactorily trained will not alone suffice to fasten liability on the

[municipality], for the officer's shortcomings may have resulted from factors other

than a faulty training program."  *City of Canton,* 489 U.S. at 390-91.  It is also not

enough for a plaintiff "to show that his injury could have been avoided if the

officer had had more or better training."  *Mayo,* 183 F.3d at 558.

Deliberate indifference is "a stringent standard of fault, requiring proof that

a municipal actor disregarded a known or obvious consequence of his action."

*Board of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997).

Deliberate indifference can be shown in one of two ways.  A plaintiff can "show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."  *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir.2008).  Or, a plaintiff can establish "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. . . ."  *Id.*  It is unclear which showing of deliberate indifference Plaintiff intended to raise.

It is not enough for Plaintiff to attempt to show that one deputy was insufficiently trained and was assaulted as a result of that insufficiency.  To defeat summary judgment and succeed on his own motion, he must show prior instances in which the County ignored a history of abuse in this context, and that the County was on notice that the training or employee supervision was deficient and likely to cause injury.  *Stemler*, 126 F.3d at 865.  Plaintiff must establish that inmates' constitutional rights have been violated during medical exams because a deputy was not present in the exam room often enough that the County should be aware of the need to train.

There is no evidence of a history of sexual abuse at the jail, let alone evidence that inmates were violated with some frequency during an examination

without a deputy present in the room.  In a separate part of its brief, the County

points out that there is no evidence of a pattern of abuse at the jail.  (ECF No. 243,

PageID.2549).  There was one allegation of assault by a staff member in the last

ten years.  That matter was investigated and the deputy's employment terminated.

The other allegation is Plaintiff's complaint of harassment by a non-defendant jail

deputy (not Scales) during June 2020.[6]  The details of that investigation are not in

the record.  In sum, viewing the record in Plaintiff's favor, the record contains two

instances of sexual assault or harassment at the Genesee County jail in the last ten

years.  These two instances do not make up the kind of history of assaults that

would put the County on notice that its training program is deficient.

Perhaps Plaintiff intended to raise a single-instance claim against the

County.  The Supreme Court left open the possibility of liability against a

municipality when there is a single constitutional violation, but that violation "was

a highly predictable, or plainly obvious, consequence of the [municipality's]

failure to train."  *Morningstar v. Worthy*, 454 F. App'x 391, 406 (6th Cir. 2011).

This kind of claim "amounts to an assertion that—the likelihood of this problem

was so obvious that any reasonable actor in the political subdivision's place would

---

[6] Because Scales was not a County employee, her assault on Plaintiff cannot be attributed to Genesee County.

have been aware of the need for specific training on this issue, even before the first violation arose." *Anderson v. Jones*, 440 F. Supp. 3d 819, 839 (S.D. Ohio 2020).

Plaintiff points to no other situation in which inmates were sexually assaulted by medical staff, nor has he established that such a sexual assault was a highly predictable result of leaving inmates alone with medical staff during medical examinations.[7]  Because there is no evidence that this kind of sexual assault was a known or obvious consequent of failing to train deputies to be in examination rooms, the claim should be dismissed.[8]

### 2.    Failure to Train Re: PREA

Plaintiff alleges the County is liable for failure to train and supervise its employees to educate inmates about PREA.  He says that when he arrived at the jail, he was not shown a PREA video or given a handout educating him about PREA like at other jails.  (ECF No. 35, PageID.187).  He says he was unaware of the PREA investigation process or counseling programs for victims of sexual assault, nor was he given the address of the Office of the Inspector General to

---

[7] Practically speaking, according to the record this is the only instance of this kind of sexual assault at the jail.  And in general, it is not highly predictable that medical staff will sexually assault patients unless supervised by a third party.

[8] To the extent that Genesee County did not adequately address a single-incident claim, the undersigned still suggests that the claim be dismissed.  Suits by indigent prisoners are subject to screening for frivolous claims.  This occurs "before docketing" or "as soon as practicable after docketing" and throughout the litigation process.  28 U.S.C. § 1915A(a).  Thus, aside from the arguments raised by the County, the undersigned brings this recommendation as a screening of Plaintiff's claims against it.

report his PREA complaints outside the jail.  (ECF No. 35, PageID.188).  In his

motion for summary judgment, he argues that the failure to provide PREA

information created an obvious potential for constitutional violations, presumably

because inmates would not know their rights under that statute.  (ECF No. 246,

PageID.2562-63).  According to the County, Plaintiff was given PREA information

in a pamphlet when he arrived at the jail, but Plaintiff disputes this.  (*Id.* at

PageID.2565).

The County asserts that, along with receiving a pamphlet at the jail when he

arrived, Plaintiff was aware of his rights under PREA because he would have

received the information at the seven prior facilities in which he was housed.[9]  And

Plaintiff submitted 20 kites, or letters, while at the Genesee County jail, including

one in which he accused a deputy of sexual harassment in June 2020.  (ECF No.

243, PageID.2539).  The implication is that, since he submitted a kite about the

sexual harassment in June 2020, he was aware of his right to be free from sexual

harassment.

The parties' dispute about whether Plaintiff received a pamphlet and was

aware of his PREA rights ignores the legal framework of the *Monell* claim that is

---

[9] One facility confirmed that Plaintiff received PREA training during March 2020.  (ECF
No. 251-1, PageID.260).  An official from another facility conveyed that prisoners must
acknowledge reading a guidebook that instructs them on their PREA rights when they first sign
on a kiosk.  (ECF No. 251-2, PageID.2692).  This official did not state whether Plaintiff
acknowledged the guidebook.

explained above.  The parties also failed to establish whether inmates have a federal right to be trained about PREA.  At any rate, based on the arguments and facts presented to the Court, the undersigned concludes that this claim fails.  To succeed on the *Monell* claim, Plaintiff must establish either that the County had a history of failing to train deputies to educate inmates on PREA and it was on notice that its training was deficient, or that it was highly probable that constitutional rights would be violated by failing to train deputies to educate inmate, and that the County had failed to train its deputies to handle recurring situations presenting an obvious potential for a violation.  Plaintiff has not established either avenue to liability.  Instead, the claim reads that Plaintiff alleges he was not educated upon his arrival at the jail, and that single instance raises the need for more or better training.  And Plaintiff made no connection between the failure to give him PREA information and the County's training practices.[10]  The connection he makes is to assert that, because he was not given PREA information, he was assaulted and was unaware of his rights.  This does not involve the County's training practices. Plaintiff appears to assume he was not given PREA materials because of deficient training, but this assumption has no evidentiary support.

      3.    Custom of Tolerance

---

[10] To this point, the County asserts that there is no causal connection between itself and Scales' conduct.  (ECF No. 243, PageID.2549).

He also alleges the County is liable for its pattern of tolerating sexual assaults by staff on inmates.  While at the jail, Plaintiff alleges he filed a PREA grievance against a non-party deputy for making sexual advances towards him. Despite his grievance, the deputy was allowed to continue working and making sexual proposals.  Plaintiff says he was not interviewed for his complaints.  (ECF No. 35, PageID.186).  The County asserts, without evidentiary support, that the matter was investigated but the claim was considered unfounded.  (ECF No. 243, PageID.2549).

A "custom of tolerance" or "inaction theory" claim cannot hinge on a single incident involving the Plaintiff.  This standard requires "multiple earlier inadequate investigations" of "comparable claims" to establish a "'link between' the local entity's failure to investigate and the plaintiff's injury."  *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020) (citation omitted); *Thomas*, 398 F.3d at 429.

There is no evidence that Genesee County had a custom of tolerating sexual assaults.  Plaintiff does not deny that his allegation against the deputy during June 2020 was investigated, although not to his liking.  He also does not dispute that there is only one other allegation of sexual abuse at the jail in the last ten years, which ended in the termination of that deputy's employment.  These instances do not reflect a custom of tolerance or inaction by the County.  Summary judgment should be awarded in favor of the County.

4.      Failure to Train Re: Reporting Allegations

Finally, in his motion for partial summary judgment, Plaintiff argues that the County is liable for failure to train deputies to report sexual abuse complaints to the appropriate officials or authorities.  (ECF No. 246, PageID.2559).  This claim should be dismissed against the County because Plaintiff never alleges (or proves) he told a jail employee about the assaults who was then duty-bound to report the complaint.

## II.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Corizon's and Genesee County's Motions for Summary Judgment (ECF Nos. 242, 243) be **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 246) be **DENIED**, and that the case be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 29, 2022         s/Curtis Ivy, Jr.
                                 Curtis Ivy, Jr.
                                 United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 29, 2022, by electronic means and/or ordinary mail.

<u>s/Kristen MacKay</u>
Case Manager
(810) 341-7850
